UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OMAR MUSLEH ALZOKARI**<br>3022 Davis Drive<br>Oxford, MS 38655<br><br>**Plaintiff**<br><br>**Against**<br><br>**THE DEPARTMENT OF STATE**<br>2201 C Street Northwest,<br>Washington, D.C. 20520<br><br>**Defendant** | Case No.<br><br><br><br>**COMPLAINT** |

## I. INTRODUCTION

1. This is an action brought under the Administrative Procedure Act to have the Department of State's Final Decision revoking Omar Musleh Alzokari's passport held unlawful and set aside on the grounds that it is arbitrary and capricious in that it is unsupported by substantial evidence, and not in accordance with law inasmuch as it was contrary to the presumption of the regularity of the official acts of government officers and because the Department is equitably estopped from revoking Mr. Alzokari's passport, in that its employees' misrepresentation to Omar Alzokari's father and to Omar Alzokari himself that he was a U.S. citizen will cause an egregiously unfair result if the Department's revocation of his passport is not held unlawful and set aside.

## II. PLAINTIFF

2. Omar Musleh Alzokari is to the best of his knowledge a citizen and national of the United States, residing in Oxford, Mississippi.

### III. DEFENDANT

3. The Department of State is a department of the U.S. government charged with responsibility for, among other things, granting and revoking U.S. passports.

### IV. JURISDICTION

4. This being a civil action against the United States arising under the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq.,* a law of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

### V. VENUE

5. Pursuant to 28 U.S.C. § 1391(e), venue is proper in the District of Columbia, where the defendant resides and where a substantial part of the events or omissions giving rise to this claim occurred.

### VI. BRIEF STATEMENT OF PROCEDURAL HISTORY AND LEGAL BACKGROUND

6. Omar Alzokari (Mr. Alzokari) was born on November 22, 1985 in Yemen.

7. Musleh Mohuzzan Alzokari, Omar Alzokari's father, who was also born in Yemen, was naturalized as a U.S. citizen on May 12, 1980.

8. Omar Alzokari's mother was never a U.S. citizen.

9. Omar Alzokari was issued full-validity U.S. passport #Z6788266; on November 25, 1990 (as Omar Muslem Alzokari); #111104358 on July 18, 1995, #027086751 on July 17, 2000, #214049764 on July 19, 2005, and #536840580 on September 4, 2015.

10. U.S. passport number 536840580 was revoked by the Department of State on April 13, 2018.

11. On July 22, 2019, Omar Alzokari requested a hearing regarding that revocation.

12. At that hearing the Department introduced copies of passport applications filed by or on behalf of Mr. Alzokari, but introduced no testimony.

13. The Department did not introduce testimony, or even a written certification, that the evidence which it submitted was all the evidence in its files regarding Musleh Mohuzzan Alzokari's residence in the United States.

14. The Department did not introduce testimony, or even a written certification, that its officers did not receive verbal statements from Musleh Mohuzzan Alzokari regarding his residence in the United States.

15. The Department offered no explanation of why it would have issued a U.S. passport to Omar Alzokari without sufficient evidence that he was a U.S. citizen.

16. Omar Alzokari presented his own testimony and that of his father and brother, Musleh Alzokari, at the hearing.

17. Omar Alzokari testified, among other things, that he was born in Yemen on November 22, 1985.

18. He further testified that he came to the U.S. in 1995.

19. Omar Alzokari also testified that his wife, Semyana Al Guci, who was born in Yemen, immigrated to the U.S. on the basis of a petition which he filed upon her behalf to classify her as the spouse of a U.S. citizen.

20. Semyana Al Guci was subsequently naturalized as a U.S. citizen.

21. Omar Alzokari testified that he has five (5) children, Muhammad, Ghania, Shamia, Abir, and Musleh.

22. All but one of these children, Muhammad, are native born U.S. citizens.

23. Muhammad, age 12, was born in Yemen.

24. Muhammad came to the United States as the beneficiary of a petition filed upon his behalf by his father, Omar Alzokari.

25. Shamia, Mr. Alzokari's 6 year old daughter, has a brain tumor for which she has received medical treatment for the past 3 years.

26. She has had several surgeries for this condition.

27. Mr. Alzokari testified that his daughter would be unable to obtain medical treatment in Yemen because the country is in a state of civil war and no sophisticated medical facilities are available there.

28. Musleh Mohuzzan Alzokari was called to testify, but was unable to provide any coherent information.

29. On March 3, 2020 the Department of State issued a final decision upholding the revocation of Omar Alzokari's passport solely because "there was not sufficient evidence in its possession that he is a U.S. citizen."

## VI. CAUSES OF ACTION

A. THE FINAL DECISION IS ARBITRARY BECAUSE IT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

30. The Final Decision rested solely upon the fact that there was supposedly not sufficient evidence in the possession of the Department to prove that Omar Alzokari is a U.S. citizen.[1]

31. This finding is not supported by substantial evidence because there was no evidence that the documents produced at the hearing were in fact all of the evidence in the Department of State's possession pertaining to Omar Alzokari's status as a national of the United States.

32. Nor was there evidence that any of the Department's employees did not receive evidence verbally from Musleh Mohuzzan Alzokari which was probative of his son's nationality.

33. Therefore the conclusion that the evidence in the Department's possession was insufficient to prove that Mr. Alzokari is a U.S. citizen (or national) is unsupported by substantial evidence, since there was no evidence in the record as to what the total evidence in the Department's possession on this issue actually was.

34. A decision unsupported by substantial evidence is arbitrary and capricious. *Association of Data Processing Serv. Orgs. v. Board of Governors*, 240 U.S. App. D.C. 301, 745 F.2d 677, 683 (D.C. Cir. 1984) (Scalia, J).

35. Accordingly, the Final Decision should be held unlawful and set aside as being arbitrary and capricious. 5 U.S.C. § 706(2).

    B. THE FINAL DECISION WAS NOT IN ACCORDANCE WITH LAW BECAUSE IT WAS CONTRARY TO THE PRESUMPTION OF REGULARITY

36. "[I]n the absence of clear evidence to the contrary, courts presume that (public officers) have properly discharged their official duties. "*United States v. Armstrong*, 517 U.S. 456, 464, 134 L. Ed. 2d 687, 116 S. Ct. 1480 (1996), *Latif v. Obama*, 666 F.3d 746, 748

---

[1] Actually the proper test is whether he is a U.S. national. 22 C.F.R. § 51.2(a).

(2011). This requirement of "clear" evidence is higher than a preponderance, although lower than beyond a reasonable doubt. *Paracha v. Trump*, 2019 U.S. Dist. LEXIS 180736, *7, 2019 WL 5296839 (D.C.D.C.).

37. The record contains passport applications which were completed by or on behalf of Omar Alzokari.

38. Because none of those forms asked how long the applicant's parent(s) resided in the U.S. or when, these applications did not prove that the officials who repeatedly issued Omar Alzokari his passports had before them evidence that U.S. citizenship had been properly transmitted to him by his father.

39. However, inasmuch as the record contains no evidence that this was all the evidence in the Department's possession pertaining to Musleh Mohuzzan's residence, these applications do not constitute evidence that the Department officials who issued him his passport did not comply with 22 C.F.R. § 51.2(a), and were insufficient to show even by a preponderance of, much less the requisite clear, evidence, that those officials had not properly done their duty.

40. Even if it had been established that all of the evidence the Department of State possessed pertaining to Omar Alzokari's U.S. nationality, or lack thereof, had been introduced into the record, this still would not be sufficient to overcome the presumption of regularity, inasmuch as this includes a presumption that all the necessary actions and documents

6

required to make an act by a government official lawful were taken, even if the government's files do not contain them. See, e.g. *United States v. Lorson Electric Co.*, 480 F.2d 554 (2d Cir. 1973) (holding that the presumption of regularity assumed that the required demand for payment had been made by the Internal Revenue Service, even though there was no evidence of it in its files).

41. Here likewise it must be presumed that the government officials who approved Omar Alzokari for the issuance of a passport saw (or heard) sufficient evidence to establish that he was a U.S. national even though now, nearly 30 years later, that evidence may not be in the Department's files[2].

42. Therefore the instant situation is indistinguishable from *Latif v. Obama*, 677 F.3d 1175 (D.C. Cir. 2012) (*Latif II*).

43. In *Latif II*, the presumption of regularity obviated any need for corroboration of the findings of government intelligence reports. *Id*. at 1192.

44. So too here the presumption of regularity eliminates any need to corroborate the many Department officials' finding that Mr. Alzokari was a U.S. national in the absence of any clear evidence in the record that he was not.[3]

---

[2] It may never have been. The officer who first issued Omar Alzokari a passport might have done so on the basis of an interview with Musleh Alzokari in which his testimony persuaded the officer that the elder Mr. Alzokari had the residence needed to transmit citizenship to his son.

[3] Or at least none that Final Decision relied upon. It is, of course, too late for the Department to cite different evidence in support of its holding. *Algonquin Gas Transmission Co. v. FERC*, 948 F.2d 1305, 1316 (D.C. Cir. 1991).

45. Because the Final Decision is not in accordance with the law, specifically, the presumption of regularity of the multiple decisions of Department of State officials that Omar Alzokari was in fact a U.S. national, it is unlawful and should be set aside.

C. THE FINAL DECISION WAS NOT IN ACCORDANCE WITH LAW BECAUSE THE DEPARTMENT IS EQUITABLY ESTOPPED FROM REVOKING OMAR ALZOKARI'S PASSPORT DUE TO ITS OWN ERRORS WHEN IT HAS BEHAVED IN A WAY THAT HAS RESULTED IN AN EGREGIOUSLY UNFAIR RESULT TO HIM AND HIS FAMILY

46. Omar Alzokari was issued a full-validity U.S. passport on October 25, 1990.

47. it wasn't until April 13, 2018, over 27 years later, that the Department of State issued Omar Alzokari a notice revoking his passport.

48. The Department relied solely upon the fact that " there was not sufficient evidence in its [the Department's] possession that he is a U.S. citizen" in its Final Decision revoking his passport.

49. If this is true, then the Department knew on the very day it first issued Mr. Alzokari a passport that it did not have sufficient evidence that he was a U.S. citizen (or national).

50. Therefore, if the basis for the Final Decision is correct, the Department of State should never have issued Omar Alzokari a U.S. passport.

51. Instead, although the Department claims it improperly issued Omar Alzokari a U.S. passport, it did not seek to revoke his current passport over 27 years after he was first issued one, and over 27 years after it had all of the evidence upon which it would ultimately premise its revocation decision.

52. Therefore, if Omar Alzokari in fact is not a U.S. national, the Department of State is equitably estopped from revoking his passport because the government officials

who erroneously granted it to him behaved in a way that would cause an egregiously unfair result if the revocation stands. *Gen. Accounting Office v. Gen. Accounting Office Pers. Appeals Bd.*, 698 F.2d 516, 526 (D.C. Cir. 1983).

53.  If the Department of State did not cause Musleh Mohuzzan Alzokari to believe that he had successfully transmitted citizenship to Omar Alzokari by issuing Omar a U.S. passport, then Musleh Mohuzzan Alzokari could, and presumably would, have filed a petition to classify Omar Alzokari as an immediate relative of a U.S. citizen, just as he did for his other son Musleh Alzokari, which meant Omar Alzokari could have almost immediately immigrated to the U.S. without being subject to a quota. 8 U.S.C. § 1151(b)(2)(A)(i)(1994).

54. So long as Omar Alzokari immigrated to the U.S. before he turned 18 (on November 22, 2003) then, as the child of a U.S. citizen lawfully admitted to the United States for permanent residence, he would have become a U.S. citizen as a matter of law upon the date of the enactment of the Child Citizenship Act of 2000, Pub. L. No. 106-395, § 104, 114 Stat. 1631, 1633 (2000) on February 27, 2001, *Larose v. Ashcroft*, No. 04-1815, 2004 U.S. Dist. LEXIS 15749, at *7 n.5 (E.D. Pa. Aug. 4, 2004), or when he came to the U.S., whichever was later, provided that he came to the U.S. prior to when he turned 18 years old. 8 U.S.C. § 1431.

55. On the other hand, if his father files a petition for Omar Alzokari now, as his son, because Mr. Alzokari is over 21 and married, he will be a "preference immigrant" and so subject to a quota.

56. Today there is a "visa cut off date" of September 15, 2007 for the married sons of U.S. citizens, which means it is likely that it would take over 12 years for him to qualify for an

immigrant visa through this category, since one may not immigrate to the U.S. so long as the visa cut-off date applicable to one's visa classification is earlier than the date that an immigrant visa petition is filed upon one's behalf.

57. But even if he waited all that time, Mr. Alzokari still wouldn't be able to obtain permanent residency without leaving the U.S., due to the fact that since he has always entered this country as a citizen, he has never been "inspected and admitted or paroled" into the U.S. as required to "adjust status" here to permanent resident. 8 U.S.C. § 1255(a), *Reid v. INS*, 420 U.S. 619, 625 (1975) ("an alien who enters by claiming to be a citizen has effectively put himself in a quite different position from other admitted aliens, one more comparable to that of a person who slips over the border and who has, therefore, clearly not been inspected." *Quoting Goon Mee Heung v. INS,* 380 F.2d 236, 237, cert. denied, 389 U.S. 975 (1967)).

58. However, if Omar Alzokari is not a citizen of the United States, then he is also unable to apply for an immigrant visa at a consulate because he would then be a citizen of Yemen and all Yemenis are prohibited from entering the United States as immigrants under Presidential Proclamation 9645.

59. Finally, he would be permanently inadmissible to the U.S. as a person who has falsely claimed to be a U.S. citizen, for which lack of wilfullness or even knowledge that he wasn't a citizen is no defense, *Valadez-Munoz v. Holder*, 623 F.3d 1304, 1309 n.7 (9th Cir. 2010) ("It should be noted that the criminal statute requires the representation to be both false and **willful**, while [§ **1182(a)(6)(C)(ii)**(I)] only requires falsity.").

60. This is egregiously unfair to Mr. Alzokari.

61. Furthermore, the revocation of Mr. Alzokari's passport makes his wife liable to denaturalization and deportation inasmuch as she immigrated to the U.S. on the basis of a

petition filed upon her behalf by Omar Alzokari classifying her as the immediate relative of a U.S. citizen, and the evidence of citizenship which he provided in support of her petition was his passport.

62. If in fact Omar Alzokari's passport was issued to him erroneously, Semyana al Guci, his wife, was never lawfully admitted for permanent residence and so never qualified for naturalization.

63. Therefore, if Omar Alzokari's passport is revoked, Semyana Al Guci would be subject to denaturalization under 8 USC § 1451(a) as a person whose naturalization was illegally procured.

64. Further, since she also was granted permanent residence by error, she would be deportable under Section 237(a)(1)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1227 (a)(1)(A) a person inadmissible at the time of entry for lack of proper documents. INA § 212(a)(7)(§ A)(i), 8 U.S.C. § 1182(a)(7)(A)(i).

65. Finally, Omar Alzokari's twelve year old son Muhammad, who came to the U.S. on Mr. Alzokari's petition, would also be deportable on the same ground.

66. Therefore Omar Alzokarai, his wife and oldest child could all be deported from the United States.

6.7 Omar Alzokari and his wife would then be faced with the awful dilemma of returning with their 4 U.S. citizen children to a chaotic war torn country, under constant bombing and with no effective central government, or abandoning them in the U.S.

68. This dilemma would be aggravated by the fact that it would force them to choose between leaving their precious 6 year old daughter, Shamia, behind to live as an orphan in the

United States, or to take her with them to a country where there is no treatment available for her life-threatening brain tumor.

69. Accordingly, even if the Department of State did have a valid basis for revoking Omar Alzokari's passport, it should be equitably estopped from doing so because it would cause an egregiously unfair result to Omar Alzokari, his wife and his children.

70. Accordingly, the revocation was not in accordance with law and so should be held unlawful and set aside.

## CONCLUSION

WHEREFORE the decision to revoke Omar Alzokari's U.S. passport should be held unlawful and set aside on the grounds that it is arbitrary and capricious, and/or not in accordance with law.

Respectfully submitted this 5th day of April, 2020

*s/Michael E. Piston*
Michael E. Piston (MI 002)
Attorney for the Plaintiffs
225 Broadway, Ste 307
New York, NY 10007
646-845-9895